IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| TERESA POLLARD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-96-PT-0414-M |
| | ) | |
| JAMES HAYES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTERED MAY 2 1 1997**

## MEMORANDUM OPINION

This cause comes on to be heard on the Defendants' -- James Hayes, Sheriff of Etowah County, and Paul Williams, Deputy Sheriff of Etowah County, *in their individual capacities*, -- Motion for Summary Judgment. The plaintiffs -- Teresa Pollard, Wanda Smith, and Brandy Pollard -- allege that the defendants violated their Fourth Amendment rights and seek damages under 42 U.S.C. § 1983. The plaintiffs also assert a state law claim of outrage under the court's supplemental jurisdiction.

### BACKGROUND

Plaintiff Teresa Pollard was married to Nathan Pollard[1] and is the daughter-in-law of Lloyd and Rosa Pollard. Plaintiff Wanda Smith is Teresa Pollard's natural daughter and Nathan Pollard's stepdaughter. Plaintiff Brandy Pollard is the natural child of Teresa and Nathan Pollard.

This case stems from a less than harmonious family relationship that ultimately erupted. For the most part of 1983 until 1995, Teresa and Nathan Pollard lived in a house on Grayson Road in Etowah County, Alabama that Lloyd and Rosa Pollard owned. The evidence suggests that tension persistently festered between the elder and younger Pollards. After Nathan Pollard's death in early May 1995, the Pollard's relationship with their daughter-in-law quickly worsened.

On May 10, 1995, Rosa Pollard, accompanied by several family members and Deputy

---

[1] Nathan Pollard died on May 2, 1995 before the material events of this case happened.

1

Williams, went to the Grayson Road house to take a boat, a lawnmower, and a ladder that Rosa Pollard believed were hers.[2] Rosa Pollard had asked Deputy Williams to escort her because she feared that a confrontation might follow. Teresa Pollard, as expected, protested Rosa's actions because she said the items had belonged to Nathan and her. At that point, Deputy Williams went inside the house and called Lloyd Pollard. After Lloyd Pollard verified that he and Rosa purportedly owned the disputed property, Deputy Williams told Rosa Pollard and her family to continue loading up the items.[3]

Throughout the encounter, Teresa Pollard and her children were noticeably upset and continually objected to Rosa Pollard taking the property. Deputy Williams thus kept the parties separate. At some point, Deputy Williams had Teresa Pollard retrieve the titles to the property. Teresa Pollard gave Rosa Pollard the title to the boat and an antique car that was on the premises.[4] Soon afterward, the incident ended and the parties left.[5]

## CONTENTIONS

The plaintiffs seek damages under 42 U.S.C. § 1983 for an unreasonable seizure in violation of the Fourth Amendment. Essentially the same evidence that supports the purported Fourth Amendment violation, the plaintiffs contend, supports a related state law claim for outrage.

The defendants allege a variety of defenses including lack of standing, consensual seizure, that the deputy's conduct was objectively reasonable, that defendant Hayes was not involved in the purported seizure, that defendant Hayes' policies did not cause the purported deprivation, qualified immunity, and absolute immunity on the state law claim.

---

[2] The boat's title was registered in Lloyd Pollard's name although, apparently, Nathan Pollard had extended possession of the boat and title. A dispute exists as to who owned the ladder and lawnmower.

[3] Teresa Pollard testified that Deputy Williams helped family members load some of the items.

[4] The antique car was not taken from the property.

[5] Teresa Pollard claims that another deputy arrived toward the end of the incident but remained in his car.

## ANALYSIS

### 1. Fourth Amendment

While the defendant's various defenses may be equally meritorious, the court concludes that the defendants are entitled to qualified immunity. The Supreme Court articulated the concept of qualified immunity in Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed.2d 396:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

Put another way, whether a plaintiff may recover civil damages against an official protected by qualified immunity normally turns on the objective legal reasonableness of the action evaluated by the legal rules that were clearly established at the time the official took action. Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed.2d 523 (1987). This standard, therefore, does not always compel government officials to err on the side of caution. Davis v. Scherer, 468 U.S. 183, 196, 104 S. Ct. 3012, 3020, 82 L. Ed.2d 139 (1984).

The Eleventh Circuit has concluded that qualified immunity protection is the norm. Exceptional circumstances must exist before stripping a government official of his protection. Lassiter v. Alabama A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994). Exceptional circumstances exist when an official's act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing. Lassiter, 28 F. 3d at 1149. The plaintiff always carries the burden of showing that the defendant's actions violated clearly established law. Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983). The plaintiff cannot satisfy her burden by making general, conclusory allegations of a constitutional violation or by stating broad legal truisms. Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1322 (11th Cir. 1989).

The task before this court is twofold. First, the court must examine whether the

defendants have proved that they were acting within the scope of their discretionary authority.[6] The plaintiff, without aid of authority, contends that Deputy Williams acted outside his discretionary authority because he had no court order or warrant. The law, however, is not clearly established that an officer must have a court order or warrant to accompany individuals to repossess property, or to aid in the repossession.[7] No genuine dispute thus exists that Deputy Williams acted within the extent of his discretionary authority. Therefore, the court must proceed to the second prong of its analysis -- were the legal norms that Deputy Williams purportedly violated clearly established at the time of his purported conduct? If the answer is no, then Deputy Williams is entitled to qualified immunity. If the answer is yes, the court must decide if the plaintiffs have produced sufficient evidence to create a genuine issue of material fact whether the defendant engaged in conduct violative of clearly established Fourth Amendment law.

The relevant law provides that any seizure must be reasonable under the Fourth Amendment. The question becomes, therefore, whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed.2d 443 (1989). In other words, the officer's subjective intent, be it sinister or virtuous, is irrelevant to Fourth Amendment analysis. See Graham, 490 U.S. at 397, 109 S. Ct. at 1872. Applying these principles to the present facts, the question is whether Deputy Williams knew his conduct was objectively unreasonable. To answer this question, an analysis of clearly established Fourth Amendment law at the time of the Deputy's actions is necessary.

The Fourth Amendment grants individuals a "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures." A "seizure" of property occurs

---

[6] The plaintiffs contend that Sheriff Hayes failed to establish policies and procedures that would have prevented an incident as this. They further argue that he subsequently condoned, ratified, and approved the seizure. The court's analysis will focus primarily on Deputy Williams because he is the officer alleged to have actually violated the Fourth Amendment.

[7] The plaintiffs argue that only exigent circumstances would have made Deputy Williams conduct legal. This argument is misplaced. The exigent circumstances doctrine is a potential basis for upholding a warrantless search where the search was made with probable cause to believe that, absent immediate action, crime evidence might have been lost and obtaining a warrant first would have been unpracticable. In other words, to preserve evidence of a crime, police are allowed to conduct a warrantless search if they show probable cause.

when some meaningful interference with an individual's possessory interests in that property occurs. United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed.2d 85 (1984). That a seizure occurred under the present facts cannot seriously be disputed. The parties differ, however, on whether Deputy Williams' conduct was unreasonable in light of clearly established law.

Lacking statutory guidance, prior court decisions furnish the needed guidance about whether Deputy Williams' conduct violated clearly established constitutional rights. The plaintiffs cite Soldal v. Cook County, Illinois, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed.2d 450 (1992) as clearly established law that, they contend, made Deputy Williams' actions unconstitutional. In Soldal, the plaintiff lived in a trailer home on a rented lot. The owner of the lot filed an eviction proceeding against the plaintiff. Instead of waiting for an eviction judgment, as required by Illinois law, the owner had the Soldals forcibly evicted. The owner notified the Sheriff's Department and requested the presence of deputies to prevent resistance to the forcible eviction. Numerous deputy sheriffs, all of whom knew that no eviction order existed and that the eviction was unlawful, were present as the owner's employees towed the trailer elsewhere.

At issue before the Supreme Court in Soldal was whether the seizure and removal of the trailer implicated the plaintiff's Fourth Amendment rights. Specifically, the court addressed whether the Fourth Amendment extended protection against unreasonable seizures to property rights as opposed to liberty or privacy rights. The Court held that personal property can be the subject of a "seizure" within the meaning of the Fourth Amendment. The Court was cautious to note, however, that whether the Amendment was in fact violated was a different question, not before the court, that required determining if the seizure was reasonable. Therefore, Soldal was not clearly established law guiding the facts before this court because the Supreme Court did not address the reasonableness of the seizure.[8]

The plaintiff does not cite, and the court cannot find, any Fourth Amendment law that was

---

[8] Apparently, the plaintiffs here glossed over the following language from the Supreme Court: "... reasonableness is still the ultimate standard under the Fourth Amendment, which means that numerous seizures of this type will survive constitutional scrutiny .... Moreover, we doubt that the police will often choose to further an enterprise knowing that it is contrary to the law, or proceed to seize property in the absence of objectively reasonable grounds for doing so. In short, our reaffirmance of Fourth Amendment principles today should not foment a wave of new litigation in the federal courts." Soldal, 506 U.S. at 71-72, 113 S. Ct. 549.

5

clearly established in 1995 that should have notified Deputy Williams that his conduct was objectively unreasonable. After the events here, however, the Eleventh Circuit handed down Cofield v. Randolph County Commission, 90 F.3d 468 (11th Cir. 1996) that addresses a similar situation. In Cofield, the plaintiffs had purchased a truck from a dealer. The dealer later discovered a mistake in the transaction and decided to repossess the truck and return the plaintiffs consideration. A sheriff's deputy accompanied the dealer's employees, at the dealer's request, to the repossession. Following the dealership's repossession of the truck, the plaintiffs brought a § 1983 action against the deputy for violating their Fourth and Fourteenth Amendment rights.

The Eleventh Circuit addressed the issue of whether a deputy sheriff can be present during an instance of self-help repossession. The plaintiffs had contended that even if a repossession is lawful, a deputy sheriff's presence transforms that repossession into a "seizure" by the state. The plaintiffs further contended that a deputy sheriff's presence causes a repossession to cease being "self help" and, thus, must be preceded by judicial process. The court disagreed and distinguished Soldal, on which the plaintiffs had relied, because the deputy sheriffs in Soldal assisted in a forcible eviction that was "patently unlawful" - in other words, violative of state law. In a footnote, the court further concluded that neither Soldal nor any other case cited by the plaintiff supported a theory that an officer's presence or aid at a repossession effects a Fourth Amendment "seizure" by the state or that his presence or aid transforms that repossession into a "levying" of property.

While Cofield was decided after this case, it suggests that the law was not clearly established even as of the date of that decision. The majority rejected the dissenting argument that Soldal had clearly established the law. The court stated:

> Finally, we think it plain that an officer's mere presence during a lawful repossession is of no moment. Indeed, arguably an officer's 'mere presence to prevent a breach of the peace' would not even constitute state action sufficient to give the court subject matter jurisdiction. Seen Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985).

Cofield, 90 F.3d at 471. The court further stated:

> Moreover, of course, in Booker and Soldal we were concerned only with the requisite state action to establish subject matter jurisdiction. Neither case supports

>the theories of liability advanced by the Cofields — i.e., that an officer's presence or aid at a repossession effects a Fourth Amendment 'seizure' by the state or that his presence or aid transforms that repossession into a 'levying' of property.

Id. at 471. Further, "we have found no precedent clearly holding that an officer's mere presence at (or after) a lawful instance of self-help repossession can amount to a violation of the Fourth and Fourteenth Amendments." Id.

Under the present facts, the state of law was, and remains, unclear whether Deputy Williams violated the Fourth Amendment by attending and possibly aiding the "repossession" of the disputed property. The plaintiffs have presented no law other than Soldal supporting their argument that Deputy Williams acted objectively unreasonably.[9] As explained, Soldal does not aid their position and, thus, the plaintiffs have failed to carry their burden of showing that clearly established law was violated. Moreover, this uncertainty compels a decision that Deputy Williams, acting as a reasonable officer, could have concluded that his actions were constitutionally permissible. Without clearly defined law to the contrary, the defendants are accordingly entitled to qualified immunity on the plaintiffs' Fourth Amendment claim.

### 2. Outrage

Alabama grants sovereign immunity to its state executive officers pursuant to Aritcle I, § 14 of the Alabama Constitution of 1901. Section 14 states that "the State of Alabama shall never be made a defendant in any court of law or equity." Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under § 14. See Parker v. Amerson, 519 So. 2d 442, 443 (Ala. 1987); Drain v. Odom, 631 So. 2d 971, 972 (Ala. 1994).

In Purvis v. Mobile County, 689 So. 2d 794 (Ala. 1997) (Houston, J., concurring specially, citing Tinney v. Shores, 77 F.3d 378 (11th Cir. 1996)), the Alabama Supreme Court reaffirmed that under Article I, § 14, the only exceptions to a sheriff's immunity from suit are actions brought to enjoin a sheriff's conduct. The plaintiffs here are suing the sheriff and deputy

---

[9] The evidence suggests that Deputy Williams' conduct was reasonable, though not necessarily appropriate. Rosa Pollard and her husband owned title to the house that Teresa Pollard lived in. They also were the title owners of the boat that was siezed. In light of these factors, Deputy Williams' conduct was not objectively unreasonable.

sheriff for money damages, not injunctive relief. The defendants are accordingly entitled to sovereign immunity from the state law claims. See also Alexander v. Hatfield, 652 So. 2d 1142, 1143 (Ala. 1994). The court will grant summary judgment as to the outrage claim.

This ___21___ day of May, 1997.

*/s/ Robert B. Propst*

Robert B. Propst
Senior United States District Judge